

**FILED**

**3:20 pm, 2/22/23**

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

FIRST INTERSTATE BANCSYSTEM,
INC. and FIRST INTERSTATE BANK,

         Plaintiffs,

vs.

DAVID HUBERT, et al.,

         Defendants.

Case No.  21-CV-0067

---

## ORDER ON *DAUBERT* MOTIONS

Plaintiffs object to the admissibility of Defendants' proffered expert witness Jay Sickler as (1) not qualified as to the damages at issue; (2) unreliable as to his discount rate scenarios; (3) unsupported as to causation and the legal merits of Plaintiffs' unjust enrichment claim; and (4) lacking professional rigor. ECF 172.  Defendants object to the admissibility of Plaintiffs' proffered expert witness William N. Holmes as irrelevant and unreliable. ECF 170.  For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion and GRANTS IN PART AND DENIES IN PART Defendants' motion.

### Relevant Background

Plaintiffs are financial institutions, and Defendants were at-will employees at the Sheridan branch until their resignations on March 22, 2021 when they began working for

Glacier Bank.  By way of summary judgment, the Court rejected all claims with the exception of "Claim Three" which alleges breach of the duty of loyalty.  Claim Three included broad allegations against Defendants that they used confidential customer lists to solicit business for a competitor bank, "Glacier."  This allegation was addressed and rejected in the context of dismissed claims because Plaintiffs failed to create any dispute of fact that Defendants misappropriated trade secrets, improperly disclosed confidential information, or solicited Plaintiffs' clients.

The only surviving part of Claim Three relates to whether Defendants Hubert, Christensen, and Martinson breached their duty of loyalty to Plaintiffs by participating with others in causing Plaintiffs' commercial lending team to depart without notice, and if so, whether this impacted the lending group's ability to continue functioning at an optimum level, at least in the short term, in order to address commercial customers' banking needs. In more detail, the Court's Order states:

> First, there is no dispute that all four Defendants were key FIB officers who left their employment on the same day and without giving FIB an opportunity to hire and train replacements.  Defendants Hubert, Christensen and Martinson were present at the meeting in Hubert's home along with Dick, Newman, and Phelps who were also members of the Commercial Lending Group.  During that meeting, Hubert and Christensen said they believed FIB intended to terminate them the next day and stated that they decided to submit their resignations the next day.
>
> Considering the evidence in the light most favorable to FIB, this can be viewed as agreeing to leave their FIB employment simultaneously even if their individual reasons for leaving differed.  Further, these three key officers knew the decision to leave on the same day would not afford FIB an opportunity to hire and train replacements for the Commercial Lending Group.  The three key officers also knew that those present in Hubert's home that day constituted nearly all of the Sheridan branch's commercial lending team.  These Defendants do not dispute that they were "a strong, coherent

2

group, and the group had greater value as a team than individually." ECF 104, p. 33. Because virtually everyone in the Commercial Lending Group present at the meeting had either voiced an intent to resign or should have known the members would resign on Monday [footnote omitted], these three officers could reasonably foresee that all resignations on the same day and without notice would impact if not hamstring that lending group's ability to continue functioning at an optimum level, at least in the short term, in order to address commercial customers' banking needs. The Court views these facts as sufficient for the issue of breach of duty to go to the jury as to Hubert, Christensen, and Martinson.

ECF 147, pp. 43-44.

The parties timely filed their designations of expert witnesses, with Plaintiffs designating William N. Holmes to provide his opinion as to the analysis, determination, and calculation of damages incurred by Plaintiffs resulting from these Defendants' actions. ECF 50, 50-1, 51 (schedules), 76 (amended report), 161 (supplemental report). Mr. Holmes assumes liability, and opines that Plaintiffs suffered losses as to at least four components of damage: (1) interest income from loans converted to Glacier Bank; (2) marketing expenses to mitigate Plaintiffs' losses; (3) internal salary and travel costs; and (4) Defendants' unjust enrichment. ECF 76, p. 5.

Defendants designated Jay Sickler to analyze and assess the economic damages claims made by Plaintiffs, including rebutting the opinion evidence of Mr. Holmes. ECF 63, 64, 169 (supplemental report). Both experts are certified public accountants who have ownership interests or are principals in their firms, and they both have extensive years of professional experience in various accounting, auditing, forensic and business areas. Mr. Holmes is also a certified fraud examiner, certified valuation analyst, and accredited in

business valuation.  Mr. Sickler is certified in financial forensics, accredited in business valuation, and an accredited senior appraiser in business valuation.

Both sides seek to strike the economic damage opinion testimony from the opposing expert.

<u>Applicable Legal Standards</u>

When it comes to the admissibility of expert evidence, the Court maintains the role of gatekeeper. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). In that role, the Court must adhere to Federal Rule of Evidence 702, which demands the assessment of "proffered expert testimony to ensure it is both relevant and reliable." *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012). To do this, "the district court generally must first determine whether the expert is qualified."  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). This requires the district court to determine whether the expert's proffered testimony – whether it concerns scientific, technical, or other specialized knowledge – has "a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

To determine whether expert testimony is admissible requires a trial court to examine "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93.  In order to establish an expert's testimony as reliable, "[t]he plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community.  Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that

the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999).  The reliability inquiry, however, is fact- and case-specific: no one factor is dispositive or always applicable, and the goal remains "ensuring that an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Bitler*, 400 F.3d at 1233 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

"Although a district court has discretion in how it performs its gatekeeping function, 'when faced with a party's objection, [the court] must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.'" *Avitia-Guillen*, 680 F.3d at 1256 (quoting *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000)).  "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.  Federal Rule of Evidence 104(a) requires trial judges to decide preliminary questions regarding the admissibility of evidence by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

A jury may award damages "only if the plaintiff proved that the defendant's breach caused them." *City of Gillette v. Hladky Const., Inc.*, 196 P.3d 184, 205 (Wyo. 2008); *see also Kirkwood v. Kelly*, 794 P.2d 891, 893-94 (Wyo. 1990).  Further, "[d]amages must be proven with a reasonable degree of certainty so that the fact finder, in turn, can determine the amount with a measurable degree of certainty.  Exact certainty of the amount of damages need not be proven, but remote, conjectural or speculative damages are not allowed." *Reposa v. Buhler*, 770 P.2d 235, 238 (Wyo. 1989) (citations omitted); *see also*

*Schlinger v. McGhee*, 268 P.3d 264, 269 (Wyo. 2012). "Unjust enrichment is the unjust retention of a benefit to the loss of another. It exists as a basis for recovery for goods or services rendered under circumstances where it would be inequitable if no compensation was paid in return." *Id.* at 272.

With these standards in mind, the Court addresses the present motion. Because the rulings relating to Mr. Holmes have the potential to affect the scope of the rebuttal testimony from Mr. Sickler, the Court will address Defendants' *Daubert* motion first.

<u>Discussion</u>

1. *Mr. Holmes's Opinions on Lost Interest Income*

Defendants argue these opinions are irrelevant because there is no discernible causal relationship to the sole remaining claim that Defendants allegedly breach their duty of loyalty by simultaneously leaving their employment with Plaintiffs and without giving Plaintiffs an opportunity to hire and train replacements. Plaintiffs respond by arguing that Mr. Holmes' calculations should not be excluded simply because he does not establish causation. Mr. Holmes assumes causation and, if the jury believes that the mass exodus caused Plaintiffs to lose customers, Mr. Holmes' opinions are directly relevant and admissible to identify and address the financial harm suffered by Plaintiffs. As support, Plaintiffs rely on *First American Title Insurance Co. v. Northwest Title Insurance Agency*, 906 F.3d 884, 897-99 (10th Cir. 2018) (affirming lost profits and risk-adjusted future lost profits based on an underlying breach of fiduciary duty by employees).

In considering the *Daubert* argument on lost income opinion testimony, the Court agrees with Defendants. Mr. Holmes assumes a finding of liability and quantifies lost

"interest income from loans converted to Glacier Bank." ECF 76.   However, the only surviving theory of liability is that Defendants' simultaneous departure breached their duty of loyalty by allegedly affecting the commercial lending group's ability to continue functioning at an optimum level, at least in the short term.   While Mr. Holmes need not opine on causation, he provides no explanation, nor does he refer to any fact to show some consistency between this one rather-limited surviving legal theory and his analysis of lost interest income from "the conversion of the loans to Glacier Bank."   "The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact of *that* event." *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) (emphasis in original, quoting Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 432 (3d ed. 2011) (REFERENCE MANUAL)).[1]

As to the *First American* case relied upon by Plaintiffs, this case is unpersuasive. By partial summary judgment, the Court (and later, the jury) concluded that certain defendants had breached their employment contracts' noncompete provisions and nonsolicitation provisions. Only one defendant in that case also breached a fiduciary duty. The jury instructions correctly stated that the jury's award of damages "may overlap among the defendants and among the claims."   906 F.3d at 897.   In contrast, the Court in this case previously rejected all similar claims, and expressly limited Plaintiffs to the liability theory discussed above.   Without some basis which explains how the remaining legal theory of the harmful event (simultaneous departure without notice) translates into lost future interest

---

[1] The Court's edition shows this quotation on page 284.

income from *that* event, Defendants' motion is granted as to Mr. Holmes' opinions on this damage component.

2. *Mr. Holmes' Damage Components – marketing expenses, salaries and travel costs, and unjust enrichment*

Defendants argue there is no evidence Plaintiffs incurred any marketing expenses in an effort to mitigate customer concerns about whether the commercial lending group could continue to function at an optimum level and meet customer needs. Defendants also argue there was no out-of-pocket loss to Plaintiffs to cover Defendants' departures, as Defendants would have had paid those amounts to their employees notwithstanding Defendants' actions. Finally, Defendants argue the calculation for these categories involve simple arithmetic, requiring no expert to aid the jury. Plaintiffs respond, disagreeing with Defendants' characterization of Mr. Holmes' testimony as simple arithmetic.

The record in this case is simply too incomplete to reach the conclusions argued by Defendants involving these categories of damages. For this reason, Defendant's motion is denied as to the exclusion of expert opinion testimony on marketing expenses, salaries and travel costs. Defendants have leave to advance these arguments at trial based on the state of the record presented at that time.

Turning next to Defendants' arguments regarding the component of damages labeled "Defendants' unjust enrichment," Defendants argue this component relates to the now-dismissed trade secrets claim and has no bearing on the surviving claim. While somewhat unclear, it appears that Plaintiffs continue to believe this damage component is relevant to the breach of loyalty claim and the factual questions for the jury, and that the

opinion is based on Mr. Holmes' expertise in the fundamental principles utilized in the banking industry and the methodology for computation of various categories of damages. Plaintiffs argue this issue should be presented at the conclusion of Plaintiffs' case, and not considered by the Court at this time.

On the damages component of "unjust enrichment," the Court agrees with Defendants.  Unjust enrichment (sometimes referred to as restitution) seeks to restore the status quo by compensating a plaintiff in the amount of the defendant's gain from the unlawful conduct.  In this case, however, any demand for Defendants to disgorge the compensation difference between their prior salaries and those paid by Glacier (which is the concept employed by Mr. Holmes – *see* ECF 50-1, p. 8; ECF 161, pp. 9, 83 (Schedule 8-SUP)), does not return Plaintiffs to their "status quo" and cannot properly be considered as a damage component for breach of loyalty.  The only arguable concept of unjust enrichment in the context of a breach of loyalty claim is that "an employee is not entitled to any compensation for services performed during the period he engaged in activities constituting a breach of his duty of loyalty even though part of those services may have been properly performed." *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 607-608, 518 S.E.2d 591 (1999) (quoting *Jet Courier Service v. Mulei*, 771 P.2d 486, 499-500 (Colo. 1989) and its reliance upon the Restatement (Second) of Agency §§ 387, 415, 469 (1958)).  Therefore, Mr. Holmes' opinion on the unjust enrichment component of damages is again excluded for failing to undertake "[t]he first step in a damage study" which would be "the translation of the legal theory of the harmful event into an analysis of the economic impact of that event."  REFERENCE MANUAL at 284.

3. *Net Present Value Discount Rate and Assumptions Relating to Lost Interest Income after the Maturity Dates of Certain Loans*

Both parties argue to exclude the other expert's opinion testimony on the net present value (NPV) discount rate. Further, Defendants argue that there is no reliable basis supporting the opinion that certain loans would continue to generate interest income beyond their maturity dates. Because the Court has excluded Mr. Holmes' testimony on lost future interest income, all arguments about NPV discount rates and future lost interest income are rendered moot. Neither expert may testify on this category of damages absent some evidence at trial that Defendants' simultaneous departure without notice affected the commercial lending group's ability to service or finance specifically-identified loans which were converted or financed at another financial institution. If such testimony has been properly and timely disclosed, and assuming it provides a factual basis for such a damage component, the Court will address reliability arguments at that time.

4. *Mr. Sickler's Qualifications*

Plaintiffs argue Mr. Sickler failed to meet the AICPA standards governing forensic services, he has little to no experience in valuing bank loans, and he did not review the loan files for the loans at issue, but relied on work done by associates. Turning first to the AICPA standards, Plaintiffs' accusations are conclusory and rejected as such, and the so-called "standards" are so aspirational and subjective as to be unworkable in a *Daubert* analysis. As to the argument of improper reliance on associates, this is unpersuasive as both experts in this case appear to have relied on associates. Plaintiffs provide no law supporting the proposition that such reliance by experts is impermissible and renders the

opinion of an otherwise qualified expert inadmissible.   Plaintiffs also provide no law supporting their argument that banking is such a unique area of business that someone with Mr. Sickler's qualifications and experience cannot render a reliable opinion in valuing bank-owned loans.  Plaintiffs' argument on the selection of discount rates is discussed and addressed above.   In all other respects, Plaintiffs' arguments relating to Mr. Sickler's qualifications are rejected.

5.   *Mr. Sickler's Opinions on Causation and Unjust Enrichment*

Plaintiffs argue Mr. Sickler's opinions on causation are improper.  Mr. Sickler is a rebuttal witness, and his report states that "Mr. Holmes' opinions fail to … [r]ecognize that Big Horn Airways was leaving FIB and therefore [its loan] should be excluded from his damages analysis." ECF 64, p. 3.  This opinion relates to Mr. Holmes' "lost future income" testimony which has been excluded.  Therefore, this issue is rendered moot at this time. Further, Mr. Sickler's opinions on unjust enrichment have also been rendered moot. Consequently, this portion of Plaintiffs' motion is denied as moot.

6.   *The "Intellectual Rigor" of Mr. Sickler's Opinions*

Plaintiffs argue Mr. Sickler makes his living testifying and did not apply the intellectual rigor of a practicing certified public accountant as determined by decisions in unrelated matters. Plaintiffs identify no law supporting the proposition that Mr. Sickler is essentially unqualified or unreliable based on findings or decisions in other matters. Consequently, this portion of Plaintiffs' argument is unpersuasive.  As to the remaining arguments, these are essentially identical to that advanced by Plaintiffs in attacking Mr.

Sickler's qualifications.   For the same reasons discussed above, this argument is unpersuasive.

Conclusion

For all the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' *Daubert* Motion regarding Mr. Sickler.  ECF 172.  Any rebuttal testimony by Mr. Sickler relating to lost future interest income is excluded subject to the opportunity to advance admissible, timely disclosed testimony purporting to rebut any admissible opinion testimony from Mr. Holmes on lost future interest income related to Defendants' simultaneous departure without notice and its effect, if any, on the commercial lending group's ability to service or finance specifically-identified loans that were converted or financed at another financial institution.  The remaining portions of Plaintiffs' Daubert Motion are DENIED.

Further, the Court GRANTS IN PART AND DENIES IN PART Defendants' *Daubert* Motion regarding Mr. Holmes. ECF 170.  Subject to the opportunity identified above, Mr. Holmes' testimony is excluded with the exception of testimony relating to marketing expenses, salaries and travel costs.  As to those categories of losses, Defendants' Motion is DENIED at this time.

Dated this 22nd day of February, 2023.

NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE